ALICE P. STICKEL *vs.* MARIO C. CASSASA.

ALICE P. STICKEL, executrix, *vs.* SAME.

Middlesex.    April 3, 1929. — June 26, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Negligence,* Motor vehicle, In use of way, Contributory.

At the trial of an action of tort for personal injuries resulting from a collision of motor vehicles, operated by the plaintiff and by an agent of the defendant respectively, which approached each other at about right angles at an intersection of streets, there was evidence that both operators looked for other vehicles when approaching the intersection, but saw none; that neither saw the other automobile until the moment of impact; and that the plaintiff entered the intersection at a speed of seven or eight miles per hour. No other witness testified as to seeing the impact. There was further evidence of the condition of the automobiles after the accident. *Held,* that the questions, whether the plaintiff was guilty of contributory negligence, and the defendant's operator of negligence, were for the jury.

TWO ACTIONS OF TORT. Writs dated April 16, 1926.

The second action originally was by William C. Stickel, husband of the plaintiff in the first action. After his death

the executrix of his will was admitted to prosecute the action.

The actions were tried together in the Superior Court before *Sisk,* J. Material evidence is stated in the opinion. At the close of the evidence, the judge denied motions by the defendant that a verdict be ordered in his favor in each action. Subject to leave reserved under G. L. c. 231, § 120, there were recorded verdicts for the plaintiff in the first action in the sum of $1,000, and in the second action in the sum of $800. Thereafter, the judge denied motions by the defendant that a verdict be entered in his favor in each action. The defendant alleged exceptions.

*Joseph Wentworth,* for the defendant.

*J. A. Post,* for the plaintiffs.

WAIT, J. The original plaintiffs, husband and wife, were injured by a collision between a truck with trailer owned by the defendant, driven by his servant in the course of his employment, and an automobile sedan, driven by the wife, in which they were riding.

The question for determination is whether there was error in denying the defendant's motion that verdicts in his favor be directed.

The trial judge could not properly direct verdicts for the defendant unless evidence binding upon the plaintiffs, as matter of law, required a finding either that the driver of the truck was not negligent, or that the driver of the sedan contributed to the accident by her lack of due care. The accident occurred at some spot not definitely fixed by the evidence in a large intersection where Mystic Street in Arlington, running in a flat curve northerly and southerly, is entered from the east by the Mystic Valley Parkway, and, somewhat further to the south, by Summer Street from the west. The truck approached from the right of travellers entering the intersection from the parkway, moving southerly on Mystic Street. The driver sat in a "three man, closed cab" with glassed doors at each end and glass in the back. Two young women were on the seat with him. There was testimony that he looked as he drew near the intersection, but saw no machine on the parkway or in the intersection, and knew

nothing of the sedan until he glimpsed it behind him and to his left about at the moment of the collision; that he swung to his right, but the impact wrenched his hand from the brake and threw his feet off the pedals so that the truck ran into and along a ditch then open in Mystic Street and extending from a beacon in that street about thirty-eight feet from the southerly line of Summer Street, and brought up against the curb of Summer Street. There was evidence that the view to the right from the parkway was limited by rising land, buildings and shrubbery; but from a point about sixty feet back from the intersection one could see sixty feet and that the distance increased as one drew nearer the junction of the curb of the parkway and Mystic Street until at that point one could see three hundred and twenty-five feet along Mystic Street. The sedan going southwesterly came up a short steep pitch from the parkway and proceeded across the intersection. The driver, intending to enter Summer Street, testified that as she came up toward Mystic Street she looked to her right but did not see the truck. She testified that she had slowed to seven or eight miles per hour on the parkway but increased her speed as she went across the intersection; that she looked to her right as she proceeded but saw no machine in the intersection, and did not know when she was struck. The sedan was thrown over upon its right side, and lay in a place not identified fully by the evidence near the car track which ran along the middle of Mystic Street. No witness testified to seeing the impact. There was testimony in regard to the condition of the machines after the accident and the marks upon them. In such a condition of the evidence manifestly there were questions of the credit to be given to witnesses, of the inferences of fact properly to be drawn from the condition of truck and sedan, of the distances, of the rates of speed, and of the place of collision, which must be decided before either due care or negligence could be determined. Such questions were for the jury.

The case differs essentially from *Pigeon* v. *Massachusetts Northeastern Street Railway*, 230 Mass. 392. There facts which were indisputable could not be reconciled with a finding that the plaintiffs had used due care. Here no such con-

trolling facts appear. We do not think it can properly be said as matter of law that Mrs. Stickel was careless in such observation as she made, nor that the defendant's driver was not careless. See *Fournier* v. *Zinn*, 257 Mass. 575; *Walker* v. *Boston Elevated Railway*, 266 Mass. 141, 145.

*Exceptions overruled.*